IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RICHARD LEONARD RADFORD, | ) | CIVIL NO. 10-00767 SOM-KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS AND GRANTING |
| vs. | ) | LEAVE TO AMEND |
| | ) | |
| WELLS FARGO BANK, | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| FREMONT INVESTMENT & LOAN, | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC., | ) | |
| MERSCORP, INC., | ) | |
| JOHN DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION
TO DISMISS AND GRANTING LEAVE TO AMEND

I.      INTRODUCTION.

On December 23, 2010, Plaintiff Richard Leonard Radford ("Radford") filed this action against Defendants Wells Fargo Bank ("Wells Fargo"), Ocwen Loan Servicing, LLC, ("Ocwen"), Fremont Investment & Loan ("Fremont"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and MERSCORP, Inc. ("MERSCORP"). Radford asserts federal and state law claims stemming primarily from a February 28, 2006, mortgage transaction concerning real property located on Wailea Alanui Drive in Kihei on the island of Maui (the "subject property").

Radford seeks damages and rescission of the mortgage transaction. Defendants Wells Fargo, Ocwen, MERS, and MERSCORP seek dismissal of all counts against it. For the reasons set

forth in this order, the court GRANTS the motion and dismisses the Complaint with leave to amend as to certain counts. Given obvious pleading defects applicable to all Defendants, the court also grants dismissal <u>sua sponte</u> as to the majority of claims against the nonmoving Defendant, Fremont.

II.     <u>FACTUAL BACKGROUND.</u>

The court assumes the Complaint's factual allegations are true for purposes of this motion. <u>See, e.g.</u>, <u>Savage v. Glendale Union High Sch.</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003).

On February 28, 2006, Radford borrowed $811,750.00 from Defendant lender Fremont, secured by a mortgage on Radford's residence. <u>See</u> Compl. ¶¶ 8, 39, ECF No. 1. MERS was Fremont's nominee, and Well Fargos is the assignee of the note and mortgage. <u>See</u> ECF No. 24, Ex. A. Ocwen is a residential loan servicing company conducting business in the State of Hawaii. <u>See</u> Compl. ¶ 9. Unable to keep up with loan payments, Radford sought a loan modification, which was denied. <u>See</u> Compl. ¶¶ 66-67.

Radford alleges, among other things, that (1) Defendants failed to provide necessary documents and make required disclosures, <u>id.</u> ¶ 44; (2) the terms of the transaction were not clear and Defendants never explained the transaction to him, <u>id.</u> ¶ 49; and (3) the loan was more expensive than

2

alternative financing arrangements that Radford qualified for, id. ¶ 51.[1]

Radford asserts that Defendants failed to provide forms and disclosures required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., the Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, and the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 et seq. Compl. ¶¶ 52-53, 98. Defendants allegedly intentionally concealed the negative implications of the loan they were offering, id. ¶¶ 56-57, and "profit[ed] from the highly leveraged instruments which were/are in conflict of Plaintiff's interests[.]" Id. ¶ 62. Radford says that, as a result, he bought a deceptive loan product that Defendants knew he could not afford. Id. ¶ 65.

Radford's Complaint is divided into nineteen separate counts: (1) violations of the Clayton Act; (2) violations of state antitrust laws; (3) violations of RESPA; (4) violations of HOEPA; (5) violations of TILA; (6) fraudulent misrepresentation; (7) breach of fiduciary duty; (8) unjust enrichment; (9) civil conspiracy; (10) complaint to quiet title; (11) violation of Hawaii Bureau of Conveyance Regulations as a mortgage servicer; (12) mistake; (13) unconscionability; (14) unfair and deceptive

_____

[1] The Complaint often fails to distinguish among Defendants as to alleged causes of action. To provide proper notice, any Amended Complaint should allege necessary facts against specific Defendants, i.e., it should tie each claim to a Defendant and explain how each Defendant is liable.

acts or practices; (15) failure to act in good faith; (16) recoupment; (17) negligent and/or intentional infliction of emotional distress; (18) violations of the Fair Debt Collection Practices Act; and (19) intentional or negligent failure to warn of a defective product.

On March 21, 2011, all Defendants except Fremont filed the present Motion, seeking dismissal of all counts. Defendant Fremont, the alleged loan originator, has not made an appearance in this case. The court notified the parties in writing that it was inclined to dismiss the Complaint as against all Defendants, then, on May 9, 2011, held a hearing on the motion. At the hearing, Radford's counsel noted that he was aware of bad behavior by banks in connection with loans in other jurisdictions. He suggested that such bad behavior must have also occurred in Hawaii. The court commented that counsel had to have a good faith basis for bringing specific claims to avoid possible sanctions. See, e.g., Holgate v. Baldwin, 425 F.3d 671, 676-77 (9th Cir. 2005); Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir. 1997).

At the hearing, Radford agreed that his "terrible" Complaint should be dismissed and that an Amended Complaint "needs to be radically different." In his written Opposition, Radford also acknowledged that most of his claims are "unlikely

to prevail as written."[2]  See Opp'n at 16, ECF No. 21.  The
present order thus memorializes an unobjected-to dismissal and
provides guidance with respect to an Amended Complaint.

Radford also has two other pending cases before this
court, Civil No. 10-00766 LEK-KSC and Civil No. 11-00018 JMS-KSC.
These cases involve other mortgage loans taken out by Radford to
purchase properties on Maui during the same time period as the
property in this case.  As Radford's Complaints in these two
cases are nearly identical to the one in the present case,
Radford should consider whether he should amend those Complaints
as well.

III.    STANDARD OF REVIEW.

On a Rule 12(b)(6) motion to dismiss, all allegations
of material fact are taken as true and construed in the light
most favorable to the nonmoving party.  Marcus v. Holder, 574
F.3d 1182, 1184 (9th Cir. 2009).  To survive a motion to dismiss,
a complaint must contain sufficient factual matter to "state a
claim to relief that is plausible on its face."  Bell Atl. Corp.
v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the

_____

[2] In the future, Plaintiff should consider amending the
Complaint preemptively if it is "terrible."  In this case,
Radford has been sitting on his "terrible" Complaint for almost
six months.  There is no need to wait for a court order
dismissing a Complaint before filing an Amended Complaint.

defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

IV.     <u>ANALYSIS.</u>

Radford's Opposition seeks leave to file an Amended Complaint. Although Radford does not withdraw his claims, he states that only six of the claims in his Complaint are fully cognizable. <u>See</u> Opp'n at 2, ECF No. 21. These claims are for fraudulent misrepresentation (Count VI), breach of fiduciary duty (Count VI), conspiracy (Count IX), unconscionability (Count XIII), unfair and deceptive trade practices (Count XIV), and intentional infliction of emotional distress (Count XVII). <u>See</u> <u>id.</u> Radford acknowledges that his claims for RESPA violations (Count III), HOEPA violations (Count IV), TILA violations (Count V), unjust enrichment (Count VII), quiet title (Count X), mistake (Count XII), violations of the covenant of

good faith and fair dealing (Count XV), intentional infliction of

emotional distress[3] (Count XVII), and FDCPA violations (Count

XVIII) are "unlikely to prevail as written," and he "request[s]

leave to amend those claims[.]"  See Opp'n at 16.

A.      Count I (Violations of the Clayton Act)

In Count I, Radford asserts violations of the Clayton

Act.  Radford alleges that "Defendants have engaged in predatory

conduct or anticompetitive conduct in an attempt to monopolize

the mortgage lending and servicing market."  Compl. ¶ 73.  The

Complaint includes no factual allegation suggesting that

Defendants entered into an agreement to affect competition or

committed acts violating federal antitrust laws.  Radford also

fails to identify any particular provision of the Clayton Act

that Defendants have allegedly violated.  Overall, he fails to

put forth any specific factual or legal allegations or to link

those allegations to particular statutory violations.  Instead,

Radford alleges that Defendants "worked to create the collapse of

the mortgage market, which in turn created an economic collapse

unprecedented since the Great Depression."  Compl. ¶ 76.  Such

sweeping statements fail to apprise Defendants of their alleged

wrongdoings.  The court additionally notes that, as Radford has

failed to allege an adequate "antitrust injury," he could lack

_____

[3] Radford simultaneously states that his intentional
infliction of emotional distress claim is a "fully cognizable
claim" and that it is "unlikely to prevail as written."

"antitrust standing" to bring this claim.[4]  Count I is dismissed
with leave to amend as to all Defendants.

B.        Counts II (Violations of the Hawaii
          Antitrust/Antimonopoly Acts)

In Count II, Radford asserts violations of state anti-
trust laws.  Radford states generally that "[m]ortgage lending
and servicing in Hawaii is an activity in or affecting interstate
commerce[.]"  Compl. ¶ 79.  He then alleges that Defendants
violated "the Hawaii Anti-Trust Act, Hawaii Revised Statutes
§ 480-13, and the Hawaii Monopolization Act, Hawaii Revised
Statutes § 480-9."  Compl. ¶ 80.  Again, Radford fails to make
factual allegations suggesting that Defendants made an agreement
to diminish competition.  Broad assertions of state antitrust law
violations do not give Defendants an opportunity to properly
defend themselves.  Count II is dismissed with leave to amend as
to all Defendants.

_____

[4] To determine whether a plaintiff is the proper party to
bring an antitrust claim and therefore has "antitrust standing,"
the court must consider the following factors:

    (1) the nature of the plaintiff's alleged injury; that
    is, whether it was the type the antitrust laws were
    intended to forestall;
    (2) the directness of the injury;
    (3) the speculative measure of the harm;
    (4) the risk of duplicative recovery; and
    (5) the complexity in apportioning damages.

See Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Calif., 190 F.3d 1051,
1054 (9th Cir. 1999); see also Knevelbaard Dairies v. Kraft
Foods, Inc., 232 F.3d 979, 987 (9th Cir. 2000).

C.          <u>Count III (Violations of RESPA)</u>

In Count III, Radford alleges a violation of RESPA, 12 U.S.C. §§ 2601-2617.  Compl. ¶ 83.

Any possible claims for violations of 12 U.S.C. §§ 2603 or 2604 for failing to provide a "good faith estimate" or "uniform settlement statement" necessarily fail because there is no private cause of action for a violation of those sections. See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 557 (9th Cir. 2010).

Radford asserts a RESPA claim under 12 U.S.C. § 2607, see Compl. ¶¶ 84-91, alleging that Defendants "accept[ed] charges for the rendering of real estate services that were in fact charges for other than services actually performed."  See Compl. ¶ 84.  Radford also alleges that Defendants are liable to him "in an amount equal to three times the amount of charges paid by Plaintiff."  Id. ¶ 91.  Radford appears to be asserting a RESPA claim under 12 U.S.C. § 2607 for illegal fees at closing.   To the extent Count III claims that Defendants received excessive fees, that claim under RESPA fails as a matter of law because § 2607 does not prohibit excessive fees, provided the fees were in exchange for real estate settlement services that were actually performed by the recipient.  See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 554 (9th Cir. 2010) (concluding that § 2607 "cannot be read to prohibit charging fees, excessive

9

or otherwise, when those fees are for services that were actually performed").

As for other RESPA claims not falling under §§ 2603, 2604, or 2607, Radford's allegations are too vague to state a claim for relief against any Defendant and are dismissed on that ground.

The movants argue that the RESPA claim is also time-barred.  The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation.  See 12 U.S.C. § 2614.  As Radford has not responded to this issue, the court relies on the limitation ground as an additional basis for dismissal of the RESPA claim against the movants.

In considering the RESPA claims against nonmoving Defendant Fremont, this court takes a more restrained approach to the statute of limitations issue than it does with the moving Defendants.  This is the same approach this court took with respect to a TILA limitations issue in its earlier decision in Asao v. Citi Mortgage, Inc., Civ. No. 10-00553 SOM/KSC (D. Haw. Apr. 28, 2011), and Casino v. Bank of Am., Civ No. 10-00728 SOM/BMK, 2011 WL 1704100 (D. Haw. May 4, 2011).  In this case, the movants have placed the limitations issue squarely before the court in their motion and have met their burden with respect to this affirmative defense.  Radford was obligated to address this

issue in response. Fremont, by contrast, has as of yet made no showing of carrying its burden on this affirmative defense.

This court hesitates to dismiss claims sua sponte in reliance on an affirmative defense that has not been raised. The court concludes that, with respect to Fremont, the better course is either to allow Radford to be heard on the issue via the issuance of an order to show cause why a claim should not be dismissed for untimeliness, or to wait for Fremont to raise the affirmative defense itself. Although it does appear to this court that Radford may face a limitations problem with his RESPA claim against Fremont, this court declines to dismiss sua sponte on the limitations issue and opts to wait for Fremont to raise the matter. The court sees little likelihood that, having failed to establish equitable tolling of the limitations period with respect to the moving Defendants, Radford could establish that equitable tolling overcomes the limitations statute with respect to RESPA claims against nonmoving Defendant Fremont. Still, equitable tolling is at least theoretically available against one party even if not available against other parties, as all parties are not necessarily in the same position. To deny Radford the opportunity to attempt to establish equitable tolling with respect to Fremont would be tantamount to requiring a plaintiff to include averments about equitable tolling in a complaint. Such a requirement would turn the concept of an affirmative

defense on its head; it would require a plaintiff to address an affirmative defense before it was even raised by a defendant and would entirely erase a defendant's burden to assert and establish an affirmative defense.

The court, of course, is aware that any claim may be dismissed under Rule 12(b)(6) on limitations grounds when that ground is "apparent on the face of the complaint." <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 969 (9th Cir. 2010). A <u>sua sponte</u> dismissal, however, does not have the benefit of the adversarial system contemplated by a motion brought under Rule 12(b)(6). This gives the court pause even though the court would apply Rule 12(b)(6) tenets to a <u>sua sponte</u> dismissal. Thus, the court notes that the Ninth Circuit was examining an element of a claim on which the plaintiff had the burden of proof when it said in <u>Omar</u> that a court may dismiss a claim <u>sua sponte</u> if "the claimant cannot possibly win relief. <u>Omar v. Sea-Land Serv. Inc.</u>, 813 F.2d 986, 991 (9th Cir. 1987). As the RESPA limitations period is a matter on which a defendant bears the burden, this court does not here <u>sua sponte</u> dismiss the RESPA claim against Fremont on statute of limitations grounds, although, as noted earlier, the RESPA claim against Fremont is dismissed on other grounds.

In summary, the court dismisses Radford's RESPA claim without leave to amend as to (1) any claim under § 2607 asserting

that a fee was "excessive" or otherwise for services that were actually performed, or (2) any claim under §§ 2603 or 2604. Allowing amendments on those matters as to any Defendant would be futile. See Martinez, 598 F.3d at 554, 557. Because the Complaint fails to state a cause of action for violation of RESPA, but because Radford's opposition suggests amendment of part of Count III is possible, the court dismisses the other parts of his RESPA claim as against all Defendants with leave to amend. By granting leave to amend, the court does not intend to suggest that the proposed amendments will or will not survive any subsequent motion to dismiss that may be brought. If Radford chooses to amend his RESPA claim, the court counsels him to plead such claim carefully, as his initial RESPA claim was asserted against Countrywide, which is not even a named Defendant in this case. See Compl. ¶ 89. In addition, Radford may want to consider whether he could overcome the limitations issue with respect to Fremont.

D.     Count IV (Violations of HOEPA)

In Count IV, Radford asserts violations of HOEPA, an amendment to TILA designed to prevent some predatory lending practices targeting vulnerable consumers. See 15 U.S.C. § 1639. Damage claims under HOEPA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Radford's damage claim under HOEPA is time-barred.

As a general rule, the statute of limitations "starts at the consummation of the transaction." <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986). Radford alleges that his transaction was consummated "on or about" February 28, 2006. <u>See</u> Compl. ¶ 40. To the extent Radford seeks money damages for HOEPA violations arising out of the February 2006 loan, those claims are barred by the one-year statute of limitation, as Radford did not file his Complaint until December 23, 2010. Because more than one year has passed, Radford cannot seek damages under HOEPA.

As discussed in detail with respect to the RESPA claim, because a limitations defense is an affirmative defense that a defendant has the burden of asserting and establishing, the court distinguishes between the moving and nonmoving Defendants in relying on the limitations ground. Accordingly, Count IV is dismissed with leave to amend as to the moving Defendants. Count IV is not dismissed <u>sua sponte</u> as to Fremont, which has not moved and asserted the affirmative defense of statute of limitations with respect to the HOEPA claim.

E.      <u>Count V (TILA)</u>

Alleging that Defendants violated TILA in issuing the mortgage and loan, Radford seeks rescission and damages. <u>See</u> Compl. ¶¶ 105-109. As explained below, the court concludes that Radford's TILA rescission claim is subject to dismissal because

Radford lacks a timely rescissionary remedy for any asserted violations of TILA (and is precluded from asserting any right to equitable tolling). See 15 U.S.C. § 1635(a). Radford's TILA damages claim is subject to dismissal because Defendants' motion to dismiss challenges the Complaint on statute of limitations grounds and Radford fails to plausibly argue that equitable tolling may apply. 15 U.S.C. § 1640(a); Hubbard v. Fidelity Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996).

Under TILA, borrowers have the right to rescind certain credit transactions in which the lender retains a security interest in the borrower's principal dwelling. 15 U.S.C. § 1635(a). The borrower has the right to rescind the transaction for three business days following the later of the date of the transaction's consummation or the date of the delivery of the information, rescission forms, and material disclosures required by TILA. Id. If the required information, rescission forms, or material disclosures are not delivered by the creditor, the right to rescind expires three years after the transaction's consummation. Id. § 1635(f); King v. Cal., 784 F.2d 910, 915 (9th Cir. 1986). The statute of limitations applicable to TILA rescission is not subject to equitable tolling. See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411–13 (1998).

Pursuant to the statute and Regulation Z, 12 C.F.R. Pt. 226, a borrower may exercise the right to rescind by

15

notifying the creditor of his intention to do so.  <u>See</u> 15 U.S.C.
§ 1635(a); 12 C.F.R. § 226.23.

Again, Radford alleges that the transaction was
consummated "on or about" February 28, 2006.  <u>See</u> Compl. ¶ 40.
Even assuming Radford was entitled to the extended rescission
period, his time to rescind the loan expired three years from
that date, in February 2009.  Radford did not file his Complaint
seeking rescission until December 2010.  Because more than three
years have passed, Radford cannot rescind his loan.

Radford's TILA damage remedy against the movants is
also time-barred.  A TILA plaintiff may seek actual damages for a
lender's failure to provide proper disclosures.  <u>See</u> 15 U.S.C.
§ 1640(a).  Under 15 U.S.C. § 1640(e), however, an action for
damages by a private individual must be instituted "within one
year from the date of the occurrence of the violation."  The
Ninth Circuit has interpreted this to mean that the limitations
period for a damage claim based on allegedly omitted or
inaccurate disclosures begins on "the date of consummation of the
transaction."  <u>King</u>, 784 F.2d at 915; <u>see also</u> <u>Hubbard</u>, 91 F.3d
at 79 (holding that when a lender fails to comply with TILA's
initial disclosure requirements, a borrower has one year from
obtaining the loan to file suit).  To the extent Radford seeks
money damages from the movants for TILA violations arising out of
the February 2006 loan, those claims are barred by the one-year

statute of limitation, as Radford did not file his Complaint until December 23, 2010.

Radford does not point to any specific information that was concealed or even allege any specific matter somehow prevented him from discovering any potential TILA claim. The acts of qualifying Radford for a loan he could not repay, failing to make disclosures, charging excessive fees, and transferring the loan do not suggest that Defendants sought to conceal information from Radford about what they were legally entitled to have received. It therefore appears that any TILA money damage claim arising out of allegedly inaccurate or incomplete disclosures is time-barred as to the moving Defendants. <u>Cf.</u> <u>Hubbard</u>, 91 F.3d at 79 (denying equitable tolling because borrower had the ability to compare the initial disclosures she received with TILA's requirements and thereby learn that the loan disclosures were inadequate).

The court grants the motion to dismiss the Radford's TILA rescission and damage claims as to the moving Defendants. The court also dismisses the TILA rescission claim against Fremont but does not dismiss the TILA damage claim against Fremont, reasoning that the limitations issue on which the court relies in dismissing the TILA damage claim against the movants is an affirmative defense that Fremont has the burden of asserting and establishing. The limitation period for the TILA damage

claim against Fremont, unlike the limitations period for the TILA rescission claim, is at least theoretically subject to equitable tolling, and the court will not _sua sponte_ foreclose that possibility, as unlikely as that appears to be. To be clear, with respect to Fremont, the court dismisses _sua sponte_ Radford's TILA rescission claim, leaving the TILA damage claim against Fremont in issue. See _Omar_, 813 F.2d at 991. Radford should seriously consider whether any TILA claim against Fremont is time-barred before including such a claim in any Amended Complaint.

    F.   Count VI (Fraudulent Misrepresentation)

   In Count VI, Radford alleges that Defendants "knowingly and intentionally concealed material information from Plaintiff that was required by Federal statutes and regulations to be disclosed to the Plaintiff both before and at the time of closing." Compl. ¶ 111. Defendants "also materially misrepresented and/or failed to disclose material information to the Plaintiff with full knowledge by defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made and/or were omissions of material fact." _Id._ ¶ 112.

   Radford's vague allegations of fraudulent misrepresentation do not meet the standard required by Rule 9(b) of Federal Rules of Civil Procedure. See Fed. R. Civ. P. 9(b)

("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Alan Neuman Prods., Inc. v. Albright</u>, 862 F.2d 1388, 1393 (9th Cir. 1988). The Complaint does not identify each Defendant's separate role in the fraudulent scheme and fails to give each Defendant notice of particular misconduct. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1108 (9th Cir. 2003) (quotation omitted). Fraud allegations must include the "who, what, when, where, and how" of the misconduct, and set forth "more than the neutral facts necessary to identify the transaction." <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009). Accordingly, Count VI is dismissed with leave to amend as to all Defendants.

G. <u>Count VII (Breach of Fiduciary Duty)</u>

Count VII alleges, without distinguishing between various Defendants, that Defendants "breached their fiduciary duties to the Plaintiff by fraudulently inducing Plaintiff to enter into a mortgage transaction that was contrary to the Plaintiff's stated intentions." Compl. ¶ 120. Defendants also allegedly breached a fiduciary duty owed to Radford by "taking positions in the highly leveraged future or options market[.]" <u>Id.</u> ¶ 121.

These allegations fail to state a claim. In <u>McCarty v.</u>
<u>GCP Mgmt., LLC</u>, 2010 WL 4812763 (D. Haw. Nov. 17, 2010), the
court held that a borrower-lender relationship is not fiduciary
in nature:

> Lenders generally owe no fiduciary duties to their
> borrowers. <u>See, e.g.</u>, <u>Spencer v. DHI Mortg. Co.</u>, 642
> F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent
> 'special circumstances' a loan transaction 'is at
> arms-length and there is no fiduciary relationship
> between the borrower and lender.'") (<u>quoting</u> <u>Oaks Mgmt.</u>
> <u>Corp. v. Super. Ct.</u>, 51 Cal. Rptr. 3d 561 (Cal. App.
> 2006)); <u>Ellipso, Inc. v. Mann</u>, 541 F. Supp. 2d 365, 373
> (D.D.C. 2008) ("[T]he relationship between a debtor and
> a creditor is ordinarily a contractual relationship
> . . . and is not fiduciary in nature.") (citation
> omitted); <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 283
> Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The
> relationship between a lending institution and its
> borrower-client is not fiduciary in nature.").

2010 WL 4812763, at *5.

Radford makes no allegations suggesting that his
relationship to Defendants is anything other than an ordinary,
arm's-length, lender-borrower relationship. Simply stating that
Defendants "breached their fiduciary duties to Plaintiff" is
insufficient to establish the existence of a fiduciary duty.
Plaintiff's allegations in Count VII are conclusory and without
factual detail. Count VII is dismissed with leave to amend as to
all Defendants.

H.      <u>Count VIII (Unjust Enrichment)</u>

Count VIII of the Complaint contends that Defendants
"have been unjustly enriched at the expense of the Plaintiff" by

20

a "higher interest rate, fees, rebates, kickbacks, profits and gains from any resale of mortgages and notes using Plaintiff identities, credit scores, income, appraisal and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme." Compl. ¶ 126. Radford fails to plead any factual allegations suggesting that this claim is plausible, and it remains entirely unclear which Defendants Radford is alleging did what acts.

To bring an unjust enrichment claim, a plaintiff must allege two elements: "(a) receipt of a benefit without adequate legal basis by Defendants; and (b) unjust retention of that benefit at the expense of Plaintiffs." Porter v. Hu, 116 Haw. 42, 54, 169 P.3d 994, 1005 (Haw. Ct. App. 2007) (citing Small v. Badenhop, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985)). Radford's claim as pled is a threadbare recital of the elements of a cause of action, supported by mere conclusory statements. The court dismisses Count VIII with leave to amend as to all Defendants.

I.      Count IX (Civil Conspiracy)

Count IX alleges that "Defendants, each of them, agreed between and among themselves, to engage in actions and a course of conduct designed to further an illegal scheme . . . and to commit one or more overt acts furtherance of the conspiracy to defraud the Plaintiff." See Compl. ¶ 131. Count IX alleges that Defendants had a "common purpose of accruing economic gains for

21

themselves at the expense of, and detriment to, the Plaintiff."
Compl. ¶ 132.

This count is dismissed because Hawaii does not recognize an independent cause of action for "civil conspiracy," and such a theory of potential liability is derivative of other wrongs.  See, e.g., Chung v. McCabe Hamilton & Renny Co., 109 Haw. 520, 530, 128 P.3d 833, 843 (2006); Weinberg v. Mauch, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995).  Count IX is dismissed with leave to amend as to all Defendants.  Allegations of conspiracy should be accompanied by the who, what, when, where, and how of the misconduct.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

    J.      Count X (Complaint to Quiet Title)

In Count X, Radford asserts a claim for quiet title and seeks "a declaration that the title to the subject property is vested in Plaintiff alone[.]"  Compl. ¶ 142.  He adds, "[D]efendants are without any right whatsoever, and said defendants have no legal or equitable rights, claim, or interest in said property,"  Id. ¶ 141.

Radford appears to be making a claim under section 669-1(a) of Hawaii Revised Statutes.  That statute provides that a quiet title "[a]ction may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the

purpose of determining the adverse claim." Radford has not alleged sufficient facts regarding the interests of various parties to make out a cognizable claim for "quiet title." Radford has merely alleged elements of section 669-1 without stating a claim. See Iqbal, 129 S. Ct. at 1949 (finding insufficient "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'"). Throughout the Complaint, Radford makes blanket statements about Defendants as if they were a unit. As the court is unable to determine what rights and interests each Defendant allegedly is claiming in the Subject Property, Radford's claim for quiet title fails.

Furthermore, Radford makes no allegation that he paid the debt secured by the mortgage. "A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." Gaitan v. Mortgage Elec. Registration Sys., 2009 WL 3244729, at *12 (C. D. Cal. Oct. 5, 2009) (internal quotation marks and citation omitted). "[A] mortgagor cannot quiet his title against the mortgagee without paying the debt secured." Id. In this case, Radford claims that Defendants have "no legal or equitable rights, claim, or interest in said property." Compl. ¶ 141. However, Radford fails to allege that he has satisfied his loan obligation.

Indeed, it is presumably because he has not paid off the loan that he is challenging its validity. Under these circumstances, his quiet title claim fails. Count X is dismissed, but the court, erring on the side of caution despite its concerns about this claim, gives Radford leave to amend as to all Defendants. If Radford reasserts this claim, he must ensure that he has a factual basis for doing so.

K.      Count XI (Violation of Hawaii Bureau of
        Conveyance Regulations as a Mortgage
        Servicer)

Count XI asserts that Defendants "engaged in numerous unlawful activities in violation of HRS § 454M as well as other Hawaii Revised Statutes [sic]." Compl. ¶ 145. Radford again fails to make factual allegations supporting his claim or to identify specify sections of section 454M that have been allegedly violated. Instead, he argues, "Defendants are subject to the penalties for these and other violation to be proven at trial" pursuant to section 454M-10 under the Hawaii Revised Statutes. Id. Radford appears to be alleging that Defendants have violated section 454M-2 of the Hawaii Revised Statutes by failing to be licensed or registered as mortgage servicers in the State of Hawaii. See Compl. ¶ 145. Radford has withdrawn this claim with respect to Ocwen, see ECF No. 29, but appears to be maintaining the claim with respect to other Defendants.

Overall, Radford's allegations do not meet the standard

of Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). He has not provided Defendants with fair notice of the wrongs they have allegedly committed. Accordingly, Count XI is dismissed with leave to amend as to all Defendants except Ocwen. At the hearing, the court reminded Radford that a plaintiff must have a good faith basis for asserting a claim. The court questioned whether Radford had such a basis, as the section 454M claim was apparently brought in reliance on a person who had heard that Defendants should have been but were not licensed or registered as mortgage servicers. This court again warns Radford that any amended claim must have a good faith basis and not be asserted based on pure conjecture. In the first instance, of course, Radford must determine whether the statutory requirement even applies.

### L.      Count XII (Mistake)

Count XII, titled "Mistake," argues that if fraud is not found, then "the underlying transaction was entered into based upon mutual mistake which entitles Plaintiff to actual damages including all fees and costs paid to obtain the loan[.]" Compl. ¶ 155.

Radford's allegations are again insufficient to meet his burden under the more rigorous pleading requirements of Rule

9 of the Federal Rules of Civil Procedure that apply to allegations of fraud or mistake. See Fed. R. Civ. P. 9(b) (requiring a party to state with particularity the circumstances constituting fraud or mistake). The claim must "be accompanied by the 'who, what, when, where, and how' of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) (internal citation and quotations omitted). Radford fails to plead the time and place of any alleged mistake and does not specify what role each Defendant played in the alleged misconduct. Radford's statement that "the transaction was entered into based upon mutual mistake" is a legal conclusions entitled to no weight. Compl. ¶ 155; see Iqbal, 129 S. Ct. at 1949. Count XII is dismissed with leave to amend as to all Defendants.

                    M.        Count XIII (Unconscionability)

        Count XIII asserts "unconscionability." Radford alleges that he "did not understand the securitized loan transaction, or the true terms of the Notes and Mortgages, and were not fully and timely informed of the same by Defendants who held superior bargaining power over Plaintiff." Compl. ¶ 158. Radford concludes that the "terms and conditions of the Notes and Mortgages are unconscionable." Id. ¶ 159.

        Unconscionability is generally a defense to the enforcement of a contract, not a proper claim for affirmative

relief.  See, e.g., Gaitan v. Mortg. Elec. Registration Sys.,

2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)

("Unconscionability may be raised as a defense in a contract

claim, or as a legal argument in support of some other claim, but

it does not constitute a claim on its own."); see also Barnard v.

Home Depot U.S.A., Inc., 2006 WL 3063430, at *3 n.3 (W.D. Tex.

Oct. 27, 2006) (citing numerous cases for the proposition that

neither the common law nor the Uniform Commercial Code allows

affirmative relief for unconscionability).

    To the extent unconscionability can be addressed

affirmatively as part of a different or independent cause of

action, such a claim "is asserted to prevent the enforcement of a

contract whose terms are unconscionable."  Skaggs v. HSBC Bank

USA, N.A., 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010)

(emphasis in original).[5]  Skaggs dismissed a "claim" for

unconscionability because it challenged only conduct such as

_____

    [5] In Skaggs, the court noted in dicta that "at least one
Hawaii court has addressed unconscionability when raised as a
claim seeking rescission."  2010 WL 5390127, at *3 n.2 (citing
Thompson v. AIG Haw. Ins. Co., 111 Haw. 413, 142 P.3d 277
(2006)).  This was not an indication that one could raise an
affirmative claim for "unconscionability."  Indeed, in Thompson,
the complaint did not assert a separate count for rescission or
unconscionability.  See Thompson, 111 Haw. at 417, 142 P.3d at
281 (indicating that the specific counts were for negligence,
fraud, breach of duty, and unfair and deceptive trade practices
under Haw. Rev. Stat. § 480-2).  In Thompson, the remedy of
rescission was based on an independent claim.  Similarly, a
remedy for an unconscionable contract may be possible; a
stand-alone claim asserting only "unconscionability," however, is
improper.  See, e.g., Gaitan, 2009 WL 3244729, at *13.

27

"obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not the breach of any specific contractual term.  Id.  Count XIII similarly fails to identify or challenge any particular contract term as unconscionable.  Count XIII is dismissed with leave to amend as to all Defendants.

N.        Count XIV (Unfair and Deceptive Acts and Practices)

Count XIV alleges that all Defendants are liable for unfair and deceptive acts and practices because, among other things, they allegedly made "material representations, omissions or practices that were likely to mislead consumers acting reasonably under the circumstances[.]"  Compl. ¶ 167.  Radford accuses Defendants of "failing to adequately disclose the true costs and risks of the subject loan," "failing to disclose that lender approved the subject loan based on financial documents," and "attempting to deprive Plaintiff of time."  Id. ¶ 163.  Count XIV is brought under section 480-2(a) of Hawaii Revised Statutes, which states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

Radford does not state a claim under section 480-2 of the Hawaii Revised Statutes because lenders generally owe no duty to a borrower "not to place borrowers in a loan even where there

28

was a foreseeable risk borrowers would be unable to repay."
McCarty, 2010 WL 4812763, at *6 (quoting Champlaie v. BAC Home
Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal.
2009)).  See also Sheets v. DHI Mortg. Co., 2009 WL 2171085, at
*4 (E.D. Cal. July 20, 2009) (reasoning that no duty exists "for
a lender 'to determine the borrower's ability to repay the
loan. . . .  The lender's efforts to determine the
creditworthiness and ability to repay by a borrower are for the
lender's protection, not the borrower's.'" (quoting Renteria v.
United States, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006)
(finding that borrowers "had to rely on their own judgment and
risk assessment to determine whether or not to accept the
loan")).

        "[A]s a general rule, a financial institution owes no
duty of care to a borrower when the institution's involvement in
the loan transaction does not exceed the scope of its
conventional role as a mere lender of money."  Nymark v. Heart
Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. App. 1991).
Nothing in the Complaint indicates that any Defendant "exceed[ed]
the scope of [a] conventional role as a mere lender of money."
Count XIV fail on that basis alone.  While dismissing Count XIV,
the court cannot conclude at this time that further amendment is
futile.  Accordingly, Count XIV is dismissed with leave to amend
as to all Defendants.  See Omar, 813 F.2d at 991.

O.        <u>Count XV ("Failure to Act in Good Faith")</u>

Count XV asserts a "failure to act in good faith."
Radford alleges that Defendants "owed Plaintiff a fiduciary duty
to deal with him in good faith and in a fair manner," Compl.
¶ 172, and that Defendants breached that duty by "making various
misrepresentations of material fact and/or omissions of material
fact, not making the mandatory federal law disclosure, not
providing loan relief and/or modification of loan terms so
Plaintiff could maintain his interest in the Property[.]"  <u>Id.</u>
¶ 173.

This claim in essence asserts the tort of "bad faith."
<u>See</u> <u>Best Place v. Penn Am. Ins. Co.</u>, 82 Haw. 120, 128, 920 P.2d
334, 342 (1996) (adopting tort of bad faith for breach of implied
covenant of good faith and fair dealing in an insurance
contract).  Although bad faith is an accepted tort when a
plaintiff is a party to an insurance contract, the tort has not
been recognized in Hawaii based on a mortgage loan contract.

Moreover, although commercial contracts for the "sale
of goods" (as opposed to a loan transaction involving real
property) also require good faith in their performance and
enforcement, this obligation does not create an independent cause
of action for Radford.  <u>See</u> <u>Stoebner Motors, Inc. v. Automobili
Lamborghini S.P.A.</u>, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).
Hawaii courts have noted that "[o]ther jurisdictions recognizing

the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." Id. at 1037 (quoting Francis v. Lee Enters., 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)). Radford does not properly plead an independent claim of bad faith.

Importantly, even assuming a bad faith tort exists with respect to Radford's loan, "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed." See Contreras v. Master Fin., Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")). Hawaii follows this distinction. See Young v. Allstate Ins. Co., 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating that the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

All of Count XV's allegations concern precontract activities (failing to make mandatory disclosures, failing to inform Radford that he did not properly qualify for the loan, failing to inform Radford that he would likely default). Defendants cannot be liable for having breached a contract covenant before any contract existed. See id.; see also Larson

v. Homecomings Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely around alleged misrepresentations made before the [mortgage loan] contract was entered into, [the bad faith claim] fails as a matter of law.").

Even if Radford were attempting to assert bad faith in the performance of a contractual right to foreclose, "a court should not conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (citation omitted). "The covenant [of good faith] does not 'impose any affirmative duty of moderation in the enforcement of legal rights.'" Id. (quoting Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735, 742 (1989)).

Count XV is dismissed. Because further amendment would be futile, dismissal of Count XV is without leave to amend as to all Defendants. See Omar, 813 F.2d at 991.

P.      Count XVI (Recoupment)

In Count XVI, Radford brings a claim for recoupment, alleging that "[a]s a result of the various wrongful acts and/or omissions . . . Plaintiff is entitled to equitable recoupment of all monies paid by them with regard to the subject loan transactions. . . ." Id. ¶ 177.

First, Radford's claim is conclusory and fails to provide the court with any facts explaining why he is entitled to recoupment.

Second, it is unclear whether Radford is alleging a claim for TILA recoupment, pursuant to 15 U.S.C. § 1640. To the extent Radford brings a claim for TILA recoupment, the court notes that "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded." Bull v. United States, 295 U.S. 247, 262 (1935). The Supreme Court has confirmed that recoupment with respect to TILA damage claims survives TILA's one-year statute of limitations. Beach, 523 U.S. at 418. However, to circumvent the statute of limitations, the recoupment claim must be asserted as a "defense" in an "action to collect a debt." 15 U.S.C. § 1640(e). Some decisions have held that for a recoupment claim to survive a motion to dismiss, the plaintiff must show the following: "(1) the TILA violation and the debt are products of the same transaction, (2) the debtor asserts the claim as a defense, and (3) the main action is timely." Moor v. Travelers Ins. Co., 784 F.2d 632, 634 (5th Cir. 1986) (citing In re Smith, 737 F.2d 1549, 1553 (11th Cir. 1984)); Agustin v. PNC Fin. Servs. Grp., 707 F. Supp. 2d 1080, 2010 WL 1507975, at *18 n.2 (D. Haw. Apr. 15, 2010). Radford neither asserts TILA recoupment as a defense, nor points to any "action to collect a debt."

Accordingly, the court dismisses Count XVI with leave to amend as to all Defendants.

> Q.      Count XVII (Negligent and/or Intentional
>         Infliction of Emotional Distress)

Count XVII alleges claims for negligent infliction of emotional distress ("NIED") "and/or" intentional infliction of emotional distress ("IIED").  Specifically, Radford claims that Defendants "caus[ed] Plaintiff to suffer severe mental and emotional distress, by misleading [him], providing a loan product [he] was not qualified for, in causing [him] to lose [his] savings, by giving [him] false hope [he] would qualify for a refinance and/or loan modification that would allow Plaintiff the right to keep his home[.]"  Compl. ¶ 180.

A plaintiff may recover for NIED "where a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  Doe Parents No. 1 v. State, 100 Haw. 34, 69, 58 P.3d 545, 580 (2002) (citations and quotations omitted).  An NIED claim "is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles."  Id. (citations and quotations omitted).  To maintain an NIED claim, a person must allege "some predicate injury either to property or to another person in order himself or herself to recover for negligently inflicted emotional distress."  Id. at 580 (citations omitted); see also

Kahoʻohanohano v. Depʼt of Human Servs., 117 Haw. 262, 306-07, 178 P.3d 538, 582-83 (2008). That is, "an NIED claimant must establish, incident to his or her burden of proving actual injury (i.e., the fourth element of a generic negligence claim), that someone was physically injured by the defendantʼs conduct, be it the plaintiff himself or herself or someone else." Doe Parents, 58 P.3d at 580-81 (citations omitted).

Radford has not alleged a predicate injury or threat of immediate injury either to himself or to someone else. Rather, Radford supports his NIED claim by providing a formulaic recitation of the elements of the claim, conclusory allegations, and generalized facts, all of which are entitled to no weight on a motion to dismiss. See Iqbal, 129 S. Ct. at 1949.

"Under Hawaii law, the elements of IIED are ʻ(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.ʼ" Enoka v. AIG Haw. Ins. Co., 109 Haw. 537, 559, 128 P.3d 850, 872 (2006) (quoting Hac v. Univ. of Haw., 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003)). The Hawaii Supreme Court defines the term "outrageous" as "ʻwithout just cause or excuse and beyond all bounds of decency.ʼ" Enoka, 109 Haw. at 559 (quoting Lee v. Aiu, 85 Haw. 19, 34 n.12, 936 P.2d 655, 670 n.12 (1997)). "Moreover, ʻextreme emotional distressʼ constitutes, inter alia, mental suffering,

mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'"  Id. (quoting Hac, 102 Haw. at 106).

Radford again fails to allege any specific facts indicating that Defendants acted in an intentional or reckless manner or that they engaged in outrageous conduct or caused him to suffer severe mental and emotional distress.  Radford's conclusory allegations are once again insufficient to state a claim for relief.  Accordingly, the court dismisses Count XVII with leave to amend as to all Defendants.

R.      Count XVIII (Violations of the Fair Debt
        Collection Practices Act)

The FDCPA prohibits various collection practices by "debt collectors."  This prohibition is intended to "eliminate abusive debt collection practices."  See 15 U.S.C. § 1692(e) (describing the purpose of the FDCPA).  The FDCPA defines a "debt collector" as follows:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests . . . .

15 U.S.C. § 1692a(6).  To be liable for a violation of the FDCPA,

the defendant must, as a threshold requirement, be a "debt

collector" within the meaning of the FDCPA.  Heintz v. Jenkins,

514 U.S. 291, 294 (1995).

Contrary to Radford's allegation, see Compl. ¶ 150,

Defendants are not "debt collectors" as contemplated by the

FDCPA.  Fremont is the original lender, which transferred the

mortgage to Wells Fargo.  Ocwen is a mortgage servicing company,

and MERS is a nominee of the mortgage.  These actors do not fall

within the FDCPA's definition of "debt collector."  See Walker v.

Equity 1 Lenders, 2010 WL 234942, at *5 (S.D. Cal. Jan. 12, 2010)

(citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir.

1985) ("The legislative history of section 1692a(6) indicates

conclusively that a debt collector does not include the

consumer's creditors, a mortgage servicing company, or an

assignee of a debt, as long as the debt was not in default at the

time it was assigned.")); Maquire v. Citicorp. Retail Servs., 147

F.3d 232, 236 (2d Cir. 1998) (stating that the FDCPA does not

apply to creditors)); see also Green v. Alliance Title, 2010 WL

3505072, at * 18 (E.D. Cal. Sept. 2, 2010) ("The definition [of

debt collector] explicitly excludes creditors as well as loan

originators or assignees who obtained the right to collect on

loan when it was not in default.").[6]

Because Defendants are not "debt collectors" as contemplated by the FDCPA, the court dismisses Plaintiff's FDCPA claim without leave to amend.  This dismissal applies to Fremont as well because a lender is not a debt collector as a matter of law.

        S.         Count XIX (Intentional or Negligent Failure to Warn of Defective Product)

In Count XIX, Radford asserts a products liability claim.  He claims that he was "enticed into purchasing [ ] a defective product, exposing the Plaintiff, and others similarly situated, to a high risk of financial damage, including bankruptcy."  Compl. ¶ 189.

A mortgage loan is not a "product" subject to products liability claims.  Products liability covers products that are reasonably certain to place life and limb in peril and may cause bodily harm if a defective.  The language of products liability law reflects its focus on tangible items.  In describing the scope of products liability law, the Restatement (Second) of Torts lists examples of items that are covered.  See Restatement

---

[6] While some courts have recognized that a "debt collector" may encompass a party that seeks to enforce a security interest through foreclosure, see Wilson v. Draper & Goldberg, 443 F.3d 373, 376-77 (4th Cir. 2006); Selby v. Bank of Am., 2010 WL 4347629 (S.D. Cal. Oct. 27, 2010), the Complaint alleges that Ocwen is a mortgage servicing company and MERS is an assignee of the debt.  See Compl. ¶¶ 9, 11.

(Second) of Torts, § 402A; see also Winter v. G.P. Putnam's Sons, 938 F.2d 1033 (9th Cir. 1991). Mortgage loans are not included in this list.

This court does not read Hawaii law as recognizing a mortgage loan as a product subject to products liability law. See, e.g., Birmingham v. Fodor's Travel Publ'ns, Inc., 73 Haw. 359, 375, 833 P.2d 70, 79 (1992) (holding that a travel guide is not a "product" subject to products liability law). Radford fails to point to, and this court could not find, any Hawaii case finding a mortgage to be a product subject to product liability law. Accordingly, Count XIX is dismissed without leave to amend as to all Defendants.

> T.      Radford's Request for Leave to Amend to
>         Include Cause of Action for Slander of Title

Radford requests leave to amend to include a cause of action for slander of title. See Opp'n at 15-16, ECF No. 21. The court grants Radford's request but cautions Radford to seriously consider whether he has a viable claim he can assert against specific Defendants.

V.      CONCLUSION.

For the foregoing reasons, the Motion is GRANTED, and the Complaint is DISMISSED in its entirety as against all the moving Defendants, with leave to amend as to specific counts, as explained above. The court also sua sponte dismisses all counts except Count IV (HOEPA) and part of Count V (the TILA damage

claim) as against Fremont.

To summarize, with respect to all Defendants, Radford is granted leave to amend Counts I, II, and part of Count III (not including "excessive" fee claims or claims made under 12 U.S.C. §§ 2603 or 2604). Count IV and the TILA damage claim in Count V are dismissed with leave to amend as to the moving Defendants. Count IV and the TILA damage claim in Count V are not dismissed as against Fremont, although Radford is free to amend those claims against Fremont. Radford is also granted leave to amend Counts VI through XIV, along with Counts XVI and XVII, as against all Defendants, except that Count XI may not include Ocwen. Radford is also granted leave to assert a claim for slander of title.

Part of Count III (for "excessive" fees and for any claim under 12 U.S.C. §§ 2603 or 2604), part of Count V (for rescission under TILA), and all parts of Counts XV, XVIII, and XIX are dismissed without leave to amend as to all Defendants. That is, Radford may not reassert in an Amended Complaint the part of Count III based on "excessive" fees and on 12 U.S.C. §§ 2603 or 2604, the part of Count V that seeks rescission under TILA, or any part of Counts XV, XVII, or XIX.

No later than June 6, 2011, Radford may file an Amended Complaint attempting to cure the identified deficiencies. If Radford chooses to file an Amended Complaint, he must clearly

state how each named Defendant has injured him.  In other words,
Radford should explain, in clear and concise allegations, what
each Defendant did and how those specific facts create a
plausible claim for relief.  Radford should not include facts
that are not directly relevant to his claims.

Failure to file an Amended Complaint by June 6, 2011,
will result in the automatic dismissal of all claims except Count
IV as asserted against Fremont and the TILA damage claim in Count
V as asserted against Fremont.  In preparing an Amended
Complaint, Radford is urged to meet the deficiencies identified
in this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 13, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Radford v. Wells Fargo Bank, et al., Civ. No. 10-00767 SOM-KSC; ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND.